*********** The Full Commission has reviewed the Deputy Commissioner's Opinion andAward based upon the record of the proceedings before the DeputyCommissioner and the briefs and oral argument before the FullCommission. The appealing party has shown good grounds to reconsider theevidence and having reviewed the competent evidence of record, the FullCommission hereby REVERSES the Opinion and Award of Deputy CommissionerPhillips.
 *********** The Full Commission finds as fact and concludes as matters of law thefollowing, which were entered into by the parties as:
 STIPULATIONS
1. At the time of the alleged injury on January 17, 2003, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employee-employer relationship existed between plaintiff and defendant-employer.
3. American Casualty Company of Reading, PA was the carrier on the risk for defendant-employer.
 ***********
Based upon all the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a 21 years old male who was working for defendant on a temporary assignment at Shuford Mills.
2. On January 17, 2003, plaintiff sustained a work-related injury while attempting to lift a heavy roll of cloth. Defendants admitted liability and compensability via an Industrial Commission Form 60 filed on September 2, 2003.
3. According to plaintiff's testimony at the hearing before the Deputy Commissioner, when he lifted the roll of cloth, he immediately felt a popping and burning sensation in his back. Over the next few days, plaintiff's pain increased and on January 21, 2003, defendant referred him to Dr. David Abernathy of Caldwell Industrial Medicine and Outpatient Care in Lenoir, North Carolina. Shortly thereafter, Dr. Abernathy referred plaintiff to Dr. Ralph Maxy, an orthopedic surgeon.
4. At first, Dr. Maxy treated plaintiff conservatively with physical therapy, medication and steroid injections but these did not alleviate plaintiff's symptoms.
5. After conservative treatment proved unsuccessful, Dr. Maxy recommended a diskectomy for plaintiff. Based upon Dr. Maxy's medical deposition testimony presented at the hearing before the Deputy Commissioner, he did not initially recommend a fusion since plaintiff was only 21 years old. However, because of the severity of plaintiff's back and leg pain as well as his degenerative disk disease, Dr. Maxy later changed his recommendation to a diskectomy and fusion.
6. On April 11, 2003, plaintiff presented to Dr. Scott McClosky, a neurosurgeon, for a second opinion. Based on medical deposition testimony presented at the hearing before the Deputy Commissioner, Dr. McCloskey recommended both a diskectomy and a fusion. He recommended that surgery be performed soon because neurological changes may diminish sensation and some of the chronic pain plaintiff was experiencing may become permanent. Dr. McCloskey opined that performing a diskectomy alone would not alleviate and might augment plaintiff's back pain.
7. On August 25, 2003, Dr. Robert Lins, a board-certified physician in the area of spine and peripheral nerve surgery, examined plaintiff for an independent medical evaluation at the request of defendants. Based on his medical deposition testimony presented at the hearing before the Deputy Commissioner, Dr. Lins recommended a right S1 selective nerve root block, which would be both diagnostic and therapeutic. Dr. Lins did not recommend a fusion as he opined that a fusion could be a very unpredictable surgical procedure and since plaintiff is a smoker, the failure rate of a fusion is increased. Further, Dr. Lins was concerned about potential problems for the plaintiff from the fusion since plaintiff was only 21 years old.
8. In his medical deposition testimony, Dr. Lins opined that he would want to do everything possible to avoid a fusion in a 21 year-old man. He addressed the new technique of artificial disk replacement but opined that this was not a viable alternative for plaintiff since it is a relatively new procedure.
9. Plaintiff's wife of two years, Terri Lynn Cole, testified at the hearing before the Deputy Commissioner that she and plaintiff had discussed the medical options and agreed that the fusion would be the best alternative.
10. Plaintiff's father, Johnny Wyatt Cole, also testified at the hearing before the Deputy Commissioner that he had discussed medical options with plaintiff and would agree with whatever decision plaintiff made since only he knows the pain he is experiencing.
11. At the hearing before the Deputy Commissioner, plaintiff testified that after considering the recommendations of Doctors Maxy, McCloskey and Lins and discussing his options with his family, he would like to proceed with the fusion as he believed it would relieve both his back and leg pain, which are severe. Plaintiff testified that although he is aware he is young to have such surgery, the quality of his life has been significantly reduced and he cannot live with the pain any longer.
12. At the hearing before the Deputy Commissioner, plaintiff testified that he tried to return to work with defendant-employer at a temporary assignment at Goodwill but was unable to continue due to his pain. Plaintiff testified that most of the time the pain in his back and legs is unbearable, preventing him from sleeping and doing most activities.
13. After examining plaintiff on April 11, 2003, and again on November 17, 2003, Dr. McCloskey opined that he was not able to determine a date on which plaintiff would be able to return to work. However, in an April 24, 2003, Patient Work Status Report, Dr. Maxy indicated that plaintiff would not be able to return to work at least until after his back surgery.
14. At the hearing before the Deputy Commissioner, defendants submitted a video surveillance tape of plaintiff in which plaintiff was observed operating his family's candle store on two separate days in October 2003. Plaintiff was observed walking and bending without any apparent signs of discomfort.
15. During the hearing before the Deputy Commissioner, plaintiff's father testified that the candle store was a new family business and when one employee was terminated and the other quit, plaintiff's father asked plaintiff and other family members if they could assist in keeping the store open. Plaintiff received no compensation for the days he worked and testified that he did not have to do any lifting.
16. In addition, defendants submitted a written statement from Dr. Maxy in which he stated that on February 6, 2003, he observed plaintiff walking to his car after the visit and noted that plaintiff seemed to be in no distress and presented no evidence of any analytic gait, contrary to his presentation during the examination. Although Dr. Maxy was concerned about possible malingering, it did not affect his recommendation as to the type of treatment he recommended for plaintiff because plaintiff's MRI showed consistent findings with his physical examination.
17. After reviewing the surveillance videotape and Dr. Maxy's observations of plaintiff, Dr. McCloskey stated that his confidence in recommending a fusion was somewhat diminished. However, Dr. McCloskey felt that at the time of surveillance, the plaintiff may have been taking medication that relieved his symptoms and the plaintiff may have been experiencing a good day as back symptoms do tend to wax and wane. Dr. McCloskey concluded that he would want to examine plaintiff several more times before he performed the fusion but the fact that plaintiff had assisted in the family business would not necessarily change his surgical recommendation.
18. The competent evidence in the record establishes that the plaintiff sustained an admittedly compensable injury by accident to his back as a direct result of the work assigned on January 17, 2003.
19. As a result of plaintiff's injury by accident, plaintiff has been unable to work and earn wages for the defendant-employer since January 18, 2003. Defendants commenced temporary total disability compensation as of that date.
20. Dr. Scott McCloskey is authorized as plaintiff's treating physician.
21. Based on an Industrial Commission Form 60 that defendants submitted on September 2, 2003, plaintiff's average weekly wage is $329.60 and his weekly compensation rate is $219.74.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. As a direct result of the work assigned to plaintiff on January 17, 2003, plaintiff sustained a specific traumatic incident to his lumbar spine, arising out of and in the course of his employment with defendant-employer, which resulted in a disabling physical injury to his back. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's admittedly compensable injury by accident, plaintiff is entitled to compensation for temporary total disability at the rate of $219.74 beginning January 18, 2003, and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. As a result of plaintiff's compensable injury by accident, the plaintiff is entitled to have defendants pay all medical expenses incurred or to be incurred, for so long as such evaluations, examinations and treatments may be reasonably required to effect a cure, give relief and will tend to lessen plaintiff's disability, including any evaluations, examinations, treatments or surgery recommended by plaintiff's treating physician, Dr. Scott McCloskey. N.C. Gen Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants shall pay compensation to plaintiff for temporary total disability at the rate of $219.74 per week from January 18, 2003, and continuing until further order of the Commission.
2. Defendants shall pay for all of plaintiff's medical expenses incurred or to be incurred as a result of plaintiff's compensable injuries by accident on January 17, 2003, for so long as such evaluations, examinations and treatments may be reasonably required to effect a cure or give relief and will tend to lessen the period of plaintiff's disability, including any evaluations, examinations, treatments and surgical intervention recommended by plaintiff's treating physician, Dr. Scott McCloskey. However, if the recommended surgical intervention is a spinal implant, defendants shall have the right to object by filing a Form 33, Request for Hearing.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be deducted from sums due plaintiff and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and shall be paid directly to plaintiff's counsel. Consideration and designation of this attorney's fee contemplates that counsel for the plaintiff shall continue and is hereby ORDERED to monitor the submission of medical expenses to defendant-employer.
4. Defendants shall pay the costs.
This the ___ day of April 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER